IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


EVELYN PRESTON,                                    05-CV-3007-BR

          Plaintiff,                               OPINION AND ORDER

v.

JOANNE B. BARNHART, Commissioner,
Social Security Administration,

          Defendant.


**ARTHUR W. STEVENS III**
Black, Chapman, Webber, Stevens, Petersen & Lundblade
930 W. Eighth Street
Medford, OR  97501
(541)772-9850

          Attorneys for Plaintiff

**KAREN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR  97204-2902
(503) 727-1053

**MICHAEL MCGAUGHRAN**
Office of the General Counsel
**STEPHANIE R. MARTZ**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2272

          Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Evelyn Preston seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Preston's protective application for Disability Insurance Benefits (DIB).

     This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough and careful review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

     Preston filed her application for DIB on May 1, 1996, alleging disability since June 15, 1987.  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on June 19, 1998.  At the hearing, Preston was represented by an attorney.  Preston and her husband testified at the hearing.

The ALJ issued a decision on August 28, 1998, in which he found Preston was not disabled before her December 31, 1992, date last insured even though she suffered from multiple sclerosis (MS) at the time of the hearing. On June 23, 2000, the Appeals Council denied Preston's request for review. On August 18, 2000, Preston filed a Complaint for judicial review with this Court.

On June 13, 2001, the Honorable John Jelderks issued an Opinion and Order reversing and remanding the ALJ's August 1998 decision and directing the ALJ (1) "to attempt to procure an opinion from Dr. Bury regarding the extent of Preston's disabilities prior to December 31, 1992,"[1] (2) to make "further inquiry . . . regarding whether any of Dr. Bury's medical records are missing," and (3) to "either credit the testimony of Preston's husband, or explain why that testimony is not credible."

The ALJ held a supplemental hearing on April 15, 2004. Preston; Don Preston, her husband; Charles Bury, M.D.; Jay Goodman, M.D., a medical expert; a vocational expert (VE); and two lay witnesses testified at the supplemental hearing. On October 25, 2004, the ALJ issued an amended decision finding Preston was not disabled before her December 31, 1992, date last insured. The ALJ's final decision after remand became the final

---

[1] At the June 19, 1998, hearing, Preston testified she believed Dr. Bury's office had lost some of her records due to a "computer glitch." Tr. 46.

decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

Magistrate Judge Jelderks thoroughly recited the relevant factual background in his June 13, 2001, Opinion and Order. The Court, therefore, need not repeat the facts here.

Except when noted below, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 199-201.

## THE ALJ'S DECISION ON REMAND

On remand, the ALJ found Preston had not performed any substantial gainful activity since her alleged onset date of June 15, 1987, or prior to December 31, 1992. Tr. 208.

The ALJ determined Preston had bladder incontinence and chronic diarrhea before her December 31, 1992, last date insured. Tr. 208. The ALJ, however, found Preston's bladder incontinence and chronic diarrhea did not meet or equal the listed impairments prior to December 31, 1992. Tr. 208.

The ALJ also assessed Preston with the Residual Functional Capacity (RFC) before December 31, 1992, to perform a full range of light work with unrestricted access to the restroom. Tr. 208.

4 - OPINION AND ORDER

## DISCUSSION

### I.   Don Preston's Testimony

To reject lay witness testimony, the ALJ must give reasons
that are germane to the witness.  *Nguyen v. Chater,* 100 F.3d
1462, 1467 (9th Cir. 1996).  *See also Regennitter v. Comm'r,* 166
F.3d 1294, 1298 (9th Cir. 1999).

Don Preston testified Preston's fatigue and incontinence
started in the mid-1980s, and he insisted she quit her job after
she cut her finger at work in 1987.  Tr. 404-05, 413.  Don
Preston testified that before December 31, 1992, Preston needed
to nap during the day, she could only do light housework, and she
stopped hunting and fishing in 1984 or 1985.  Tr. 407-09.

The ALJ found Don Preston's testimony was not credible with
respect to the issue of the onset of Preston's symptoms prior to
December 31, 1992, because it was contradicted by the medical
evidence and the testimony of Shirley Davis, another lay witness.
For example, Davis testified Preston continued to accompany
friends hunting annually until 2002.  Tr. 384.  Although Preston
wouldn't hunt, she would "ride along, you know and sit, wait for
us" and her diarrhea only presented a problem on one occasion of
waiting in the truck.  Tr. 384-85.

In addition, the ALJ noted Don Preston testified Preston did
not go to the doctor more often before 1995 because she was
"embarrassed to talk about" her fatigue and bladder control

problems.  Tr. 404.  Dr. Bury, however, testified Preston was

"pretty straight with [him] from the beginning on it," and even

though she may have been "embarrassed by it publicly, . . . she

was pretty straight up with [him] on it."  Tr. 324.

The Court concludes the ALJ gave reasons that are germane to

Don Preston for finding his testimony not credible.  Accordingly,

the Court finds the ALJ did not err when he found Don Preston's

testimony not credible.

## II.  Dr. Charles Bury.

It is well-settled that "greater weight is afforded to the

opinion of a treating physician than to that of [a] non-treating

physician, because the treating physician is employed to cure and

has a greater opportunity to know and observe the patient as an

individual."  *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir.

1993)(internal quotations omitted).  A treating physician's

opinion is controlling when it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is

not inconsistent" with other evidence of record.  20 C.F.R.

§ 404.1527(d)(2).  When a treating physician's opinion is not

entitled to controlling weight, the ALJ must give "specific,

legitimate reasons" for rejecting it if that opinion conflicts

with another physician's opinion or with evidence in the record.

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  When the

opinion of the treating physician or other medical expert is

uncontroverted, the ALJ must give "clear and convincing reasons" before rejecting such an opinion. *Id.* *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).

The ALJ must also give "specific, legitimate reasons" for rejecting the opinion of an examining physician when that opinion conflicts with another physician's opinion or with evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In compliance with the Court's remand Order, the ALJ called Dr. Bury to testify at the supplemental hearing on April 15, 2004, to determine whether any of Preston's medical records were missing and to determine his opinion as to the extent of Preston's disabilities before December 31, 1992.

Dr. Bury testified the medical records from his office for Preston were complete and he had produced all of his available records to the ALJ. Tr 329. These records establish Preston made only five visits to Dr. Bury between 1988 and 1992. Tr. 189-90.

Dr. Bury testified Preston reported to him in 1988 complaining of diarrhea, and Dr. Preston performed a sigmoidoscopy and took x-rays, both of which were "unrevealing." Tr. 310. Dr. Bury attributed Preston's diarrhea and fatigue to possible food allergies and placed Preston on an elimination diet. Tr. 310. Dr. Bury testified Preston showed some

improvement in April 1988 after being on the elimination diet.

Dr. Bury noted he did not give Preston medicine for diarrhea.  Tr. 310.  Preston reported to Dr. Bury once in 1989 for treatment of a subaceous cyst and once in 1990 when she hurt her back.  Tr. 190.  Dr. Bury saw Preston again in January 1992 to address urinary tract problems.  Tr. 189, 310.  Dr. Bury testified the urinary tract problems and bowel incontinence could have been related to MS, but they also could be "explained by just non-MS" reasons.  Tr. 310, 313.  Dr. Bury told Preston at her 1992 visit "to stop smoking, gave her some hormones, and to return if the urination got worse," but she did not return to his office until 1993.  Tr. 311.  Dr. Bury testified he believed

> [Preston's] first manifestations [of MS] were
> spinal cord lesions . . . but [one] can have
> lesions there a long time without serious problems
> . . . .  [W]hen the CT or the MRI was done in '95,
> the lesions were real [*sic*] obvious . . . .  Well
> these didn't develop just yesterday, they've been
> there for several years.

Tr. 312.  Dr. Bury further opined it was possible that if an MRI had been done on Preston in 1991 or 1992, the lesions wouldn't have been visible on an MRI.  Tr. 312.

In his opinion on remand, the ALJ relied on his review of the medical records, Dr. Bury's testimony, the testimony of Dr. Goodman, and Plaintiff's testimony.  Although Dr. Bury opined Preston's bladder and bowel incontinence could be consistent with MS, the ALJ noted Preston testified she already had problems with

incontinence "probably always . . . when [she] was little, or younger." Tr. 350. Preston also testified she had had at least three operations on her bladder to attempt to address her control problems that her doctors attributed to Preston having children many years before she stopped working, which was in 1987. Tr. 349. Finally, Preston testified she began having serious problems with diarrhea in the early 1980s. Tr. 351.

In addition, Dr. Goodman explained incontinence in the MS context "is usually due to a paralysis of the muscles going to the bladder or rectum," but the rectal exam performed on Preston by Jon McKellar, M.D., in May 1996 after Preston had been diagnosed with MS showed "normal, good rectal tone which means there is no evidence whatever that the nerve going to the rectum was being compromised . . . by an MS lesion." Tr. 354. Dr. Goodman opined Preston's "long-standing problem with urinary incontinence is more likely explained by bladder problems as an aftermath of pregnancies and the sagging that went on there." Tr. 354.

After a thorough review of the record, the Court finds the ALJ adequately supported his conclusion that Preston's medically determinable impairments through December 31, 1992, did not meet or medically equal one of the listed impairments. Accordingly, the Court concludes the ALJ did not err because he provided a legally sufficient basis supported by the record for finding

Preston was not disabled as defined in the Social Security Act at any time through her date last insured of December 31, 1992.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 23rd day of February, 2006.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge